[Civ. No. 29160. First Dist., Div. One. Mar. 6, 1972.]

Estate of FRANCES M. MOLERA, Deceased.
BARNEY McGETTIGAN et al., Petitioners and Respondents, v.
LORENA WILSON HUFFMAN et al., Objectors and Appellants;
JOHN E. TROXEL, as Executor, etc., Respondent.

[Civ. No. 29567. First Dist., Div. One. Mar. 6, 1972.]

Estate of FRANCES M. MOLERA, Deceased.
LONE MOUNTAIN COLLEGE, Petitioner and Respondent, v.
ABELARDO HENRY GUADALUPE COOPER et al.,
Objectors and Appellants;
JOHN E. TROXEL, as Executor, etc., Respondent.

(Consolidated Appeals.)

## Counsel

L. Nelson Hayhurst, Stuart M. Gordon, Fields, McBride, Gordon & Rees and Fields, Roos & McBride for Objectors and Appellants.

No appearance for Respondent in Civ. No. 29160.

Elden C. Friel for Petitioners and Respondents in No. 29160.

Stanley A. Doten, Gerald V. Niesar and Morrison, Foerster, Holloway, Clinton & Clark for Petitioner and Respondent in No. 29567.

William L. Ferdon, David R. Pigott, Walter M. Frank and Chickering & Gregory for Respondent in No. 29567.

## OPINION

**MOLINARI, P. J.**—These are appeals from two separate decrees of preliminary distribution in the above-entitled estate which have been consolidated for purposes of disposition in a single opinion of this court.

Decedent died on October 1, 1968, leaving a last will and testament and a codicil thereto (hereinafter the will) which were admitted to probate on October 25, 1968. Under the terms of the will decedent bequeathed the sum of $50,000 and some books to Lone Mountain College. Another provision of the will directed that two tracts of land in Monterey County belonging to decedent be sold by the executor during administration and that the proceeds thereof be distributed in equal shares by right of representation to the children of decedent's deceased cousin, Francisca Vallejo McGettigan and to Mona McGettigan, the wife of Barney McGettigan, one of Francisca McGettigan's children. Four hospitals were named as the principal residuary beneficiaries under the will.

On October 14, 1969, appellants Juan Ablardo Cooper and Lorena Wilson Huffman, alleging that they were first cousins and heirs at law of decedent, filed a second amended petition for revocation of the probate of the will upon two grounds: lack of testamentary capacity because of unsoundness of mind and undue influence.

On August 5, 1970, Lone Mountain College filed a petition for preliminary distribution of the monies and books bequeathed to it under the terms of the will. The matter was referred to a probate commissioner who, after a hearing, filed a report stating that preliminary distribution was proper. In his report the commissioner took cognizance of appellants' will contest but observed that there was no statutory or decisional law preventing distribution pending the determination of a will contest. The commissioner found that, in addition to the instant will, decedent had executed seven previous wills in each of which Lone Mountain College was named as a beneficiary, that appellants were not named in any of the wills, and that they stood only to share in decedent's estate in case of intestacy. Accordingly, the commissioner determined that appellants were not persons

"interested" in the estate entitling them to resist an application for preliminary distribution under Probate Code section 1000.[1] The report stated, further, that in any event appellants would not be aggrieved by the decree of preliminary distribution since the estate inventoried in excess of $8,000,000. On September 10, 1970, the probate court made its order accepting the commissioner's report which it incorporated in the order by reference, and ordered that preliminary distribution be made to Lone Mountain College as prayed.

On January 28, 1970, Barney McGettigan and Edward McGettigan, two of Francisca McGettigan's children, and Mona McGettigan (herein-after the McGettigans) petitioned for preliminary distribution to them of their one-eighth prorata share of the net income from the land which, under decedent's will, was to be sold and the proceeds distributed to the children of Francisca McGettigan and to Mona McGettigan. The peti-tion recited that the land had not been sold as provided in the will because of certain delays, but that the distribution of the net income from said land could be effected without loss to the creditors of the estate or injury to the estate or any person interested therein. After a hearing, the court, on April 21, 1970, ordered preliminary distribution of the sum of $2,493.86 to each of the three petitioners for an aggregate sum of $7,481.58, plus all future net income to the date of final distribution. On August 7, 1970, the court entered its order amending the decree of prelim-inary distribution *nunc pro tunc* as of April 21, 1970. By the terms of said amended decree, the court ordered the McGettigans to file a bond in the amount of $10,000, guaranteeing the return to the estate of all sums distributed to them in the event appellants should be successful in the will contest and it was determined that the McGettigans were not-entitled to said distribution. The amended decree also provided that no distribution was to be made to the McGettigans in excess of the prin-cipal amount of said bond or any increase thereof. A corporate surety bond in the amount of $10,000 and complying with the terms of said amended decree was filed by the McGettigans on August 18, 1970.

On September 20, 1971, pursuant to a motion for summary judgment, the superior court made and entered its summary judgment ordering that appellants' second amended petition for revocation of the probate of the instant will be dismissed.[2] Appellants have appealed from said judgment.

---

[1] The report noted that appellants would not only have to prevail in contesting the will then under probate but also in contesting at least seven previous wills. The report observed: "All they have is a mere hope."

[2] Pursuant to Evidence Code sections 452 and 459 we may take judicial notice of the records of the superior court.

Accordingly, said summary judgment is not a final determination that appellants have no grounds of will contest so as to render this appeal moot. ■ A judgment is not final so long as the action in which it is rendered is pending, and an action is deemed to be pending until its final determination on appeal or until the time for appeal has passed, unless the judgment is sooner satisfied. (Code Civ. Proc., § 1049; *Pacific Gas & Elec. Co.* v. *Nakano,* 12 Cal.2d 711, 714 [87 P.2d 700, 121 A.L.R. 417]; *Jennings* v. *Ward,* 114 Cal.App. 536, 537 [300 P. 129].) We do observe, however, that at oral argument counsel for appellants advised this court that they had abandoned the ground of decedent's alleged unsoundness of mind and the ground that the will was procured by fraud, and that they rely solely upon the ground of undue influence in their will contest.

Probate Code section 1000 provides that "any person interested in the estate" may resist an application for preliminary distribution. Appellants assert that they have such an interest because, as first cousins of decedent, they are heirs at law and, as such, would be entitled to share in decedent's estate if it should be determined that her estate is to be distributed as an intestate estate.

Appellants rely, essentially, upon the cases which have defined "any person interested" who may contest a will before probate (Prob. Code, § 370) and those which have defined "any interested person" in contests after probate (§ 380). These cases hold that an interested person who may contest a will is one who has "such a pecuniary interest in the devolution of the testator's estate, as would be impaired or defeated by the probate of a will or be benefited by the setting aside of the will." (*Estate of Collins,* 268 Cal.App.2d 86, 91 [73 Cal.Rptr. 599, 39 A.L.R.3d 689]; *Estate of Robinson,* 211 Cal.App.2d 556, 558 [27 Cal.Rptr. 441]; *Estate of Arbuckle,* 98 Cal.App.2d 562, 566 [220 P.2d 950, 23 A.L.R.2d 372]; *Estate of Land,* 166 Cal. 538, 543 [137 P. 246].)

With particular reference to Probate Code section 1000, which applies specifically to a petition for preliminary distribution, the only case in this state which has attempted to delineate the interest required by the language of that statute is *Estate of Sandy,* 230 Cal.App.2d 309 [40 Cal.Rptr. 837]. In that case it was held that the determination whether a person has a sufficient interest to resist a petition for preliminary distribution is a question of law (at p. 312), and that in order to establish such interest it must be shown that it is "a direct contingent interest" and not a remote interest. (At p. 314.) In *Sandy* it was determined that brothers, sisters, nephews and nieces of decedent's subsequenty deceased widow did not have a sufficient interest to object to a petition for preliminary distribu-

tion where they were not heirs of decedent's estate nor contestants, but merely collateral heirs at law of the estate of decedent's deceased widow who would have to be successful in their contest of the widow's estate before they could make any contentions against the decedent's estate.

The present case is distinguishable from *Sandy* in that appellants are heirs of decedents and contestants of a will offered for probate as the last will of decedent. They are not collateral heirs but heirs who would take directly if decedent had died intestate. Their interest as heirs under the intestacy laws is a direct interest and not a remote interest. Their asserted interest is not rendered remote merely because appellants may be required to contest seven previous wills before they would be entitled to succeed to decedent's estate. As observed in *Estate of Robinson, supra,* a case involving the question whether there was present the required interest to contest a will, heirs who take by intestate succession benefit by revocation of probate "and this is true notwithstanding a prior will, or a number of prior wills, might affect their rights to succeed as heirs . . . . These wills might be offered for probate if the probate of the will before the court was revoked, but if, and as they were, insofar as they invaded the heirs' right to succeed as upon intestacy, the heirs could contest them in turn, and each time they succeeded in obtaining, by contest, a denial of probate or a revocation of probate already had; they would benefit thereby." (211 Cal.App.2d at p. 558.)

We note that the probate statutes, dealing with the contest of wills (Prob. Code, §§ 370, 380), state that "any person interested" may contest a will, while section 1000 of the Probate Code, dealing with opposition to a petition for preliminary distribution, states that "any person interested in the estate" may resist the application. ■ We perceive that if a person has an interest sufficient to entitle him to contest a will he has an interest sufficient to entitle him to resist an application for preliminary distribution. It is incongruous to hold that a person is entitled to contest a will because he has an interest entitling him to do so and then hold that such interest does not entitle him to resist an application for preliminary distribution. If such were the case a substantial portion of the estate of a decedent could be distributed under the terms of a will, the probate of which was subsequently revoked as a result of the contest, to the detriment of the successful contestant who thereby became entitled to succeed to the decedent's estate.

In the present case, we conclude, however, that although appellants are heirs who would take directly if decedent died intestate, they do not have a sufficient contingent interest entitling them to resist the instant petitions for preliminary distribution. ■ We observe, initially, that the

mere fact that a will may still be open to contest does not necessarily preclude partial distribution. (See *Estate of Hinkel,* 176 Cal. 563, 567 [169 P. 70].) Under Probate Code section 1001 preliminary distribution may be ordered if the court finds from the evidence that the estate is "but little indebted," that the inheritance taxes have been paid, and that the share prayed for may be distributed without loss to creditors or injury to the estate or to any person interested therein. (*Estate of Hogemann,* 63 Cal.2d 131, 136 [45 Cal.Rptr. 149, 403 P.2d 405].) If each of these conditions is met, the court, by virtue of the mandate of sections 1000 and 1001 which implement the public policy of this state favoring the earliest possible distribution of estates, must make an order of preliminary distribution. (*Estate of Hogemann, supra; Estate of Stephenson,* 65 Cal.App.2d 120, 123 [150 P.2d 222].)

Appellants claim that they have a sufficient interest to resist the instant petitions for preliminary distribution on the basis that the shares prayed for may not be distributed without injury to the estate and to them as persons interested therein. No claim is made that the other conditions mentioned in Probate Code section 1001 have not been met. Our inquiry, therefore, is whether any pecuniary interest appellants may have in the devolution of the testatrix's estate would be impaired or defeated by the making of the instant orders for preliminary distribution.

In a petition for preliminary distribution the court is called upon to determine "whether the distribution should be *then* made," and "[A] showing that the distribution cannot be then made is a complete answer to the application." (*In re Painter,* 115 Cal. 635, 639 [47 P. 700].) Moreover, before a court can make an order for preliminary distribution it is necessary that it know who the parties entitled to the estate are, and in such a proceeding the court may determine who the heirs are and to what proportion of the estate each is entitled. (*Estate of Ross,* 187 Cal. 454, 466 [202 P. 641]; *In re Painter, supra,* at pp. 639-640; *Estate of Stephenson, supra,* 65 Cal.App.2d 120, 122-124.) Other relevant questions may present themselves, and among these are such questions of law as the construction of a will. (*In re Painter, supra,* at p. 640.)

 In the present case appellants' sole ground of will contest is undue influence. That ground is predicated on the allegation that Edgar T. Zook, decedent's longtime attorney, and the person who prepared, or caused to be prepared, the instant will, supplanted his will for that of testatrix by taking advantage of the trust and confidence reposed in him by her, and thereby succeeded in having her devise land under said will to his son and daughter.

■ It is the general rule that if the whole will is the result of the presence of undue influence, the will is totally invalidated; but if only a part of the will was thus procured, that part may be rejected as void, but the remainder, which is the outcome of the testator's free will, is valid if it is not inconsistent with and can be separated from the part which is invalid. (*Estate of Webster*, 43 Cal.App.2d 6, 15-16 [110 P.2d 81, 111 P.2d 355]; *Estate of Stauffer*, 142 Cal.App.2d 35, 41 [297 P.2d 1029]; *Estate of Carson*, 184 Cal. 437, 441 [194 P. 5, 17 A.L.R. 239]; see *Estate of Harkleroad*, 62 Cal.App.2d 60, 61, 65 [144 P.2d 88]; *Estate of Beckley*, 233 Cal.App.2d 341, 348 [43 Cal.Rptr. 649].)

In *Webster*, it was held that "The verdict of the jury finding that the appellants used undue influence in reference to the residuary clause of the will would not necessarily be any determination that they used undue influence in respect to the provisions of the will revoking the former will and appointing Crane executor where the jury also found that certain provisions of the same will were not made under their undue influence." (43 Cal.App.2d at p. 16.) Similarly, in *Stauffer*, it was held that a separate, distinct and independent residuary clause which was not induced by undue influence will stand even though bequests to some persons named therein were procured by undue influence. (142 Cal.App.2d at pp. 41-43.) In *Carson*, a will induced by the false representations of the residuary legatee was held to be valid as to bequests to others in the absence of any showing that such bequests were affected by the representations. (184 Cal. at p. 441.)

*Harkleroad* presents the situation where the mother of the testatrix had, by undue influence, induced her to make a will giving certain real and personal property to the mother. The appellate court affirmed the order of the court denying probate of that part of the will which left the property to decedent's mother, but ordered the remainder of the will to be admitted to probate because it was the free and voluntary act and will of the deceased. (62 Cal.App.2d at pp. 61, 65.) In *Beckley*, the testatrix made a will leaving one-half of her estate to one Kuebler and the other one-half in trust to Kuebler for the benefit of her grandniece, with remainder over to the latter's children upon the termination of the trust. Upon evidence supporting the application of the presumption of undue influence by Kuebler as a person in a confidential relationship with the testatrix, the reviewing court held that the entire will was the product of such influence, and for this reason, the entire will was invalidated. (233 Cal.App.2d at p. 348.)

■ In the present case there is nothing in the allegations of appellants' petition for revocation of probate which would tend to show that any of the other beneficiaries of the subject will was a party to Zook's alleged

undue influence or that his alleged undue influence had any effect upon the testatrix's testamentary intentions other than to induce her to leave certain land to his children and to appoint him as her executor. The provisions of the will in favor of Zook's children and those appointing him executor are not inconsistent with the provisions in favor of the other beneficaries and are easily and completely separable from the remainder of the will. Accordingly, if appellants should succeed in the will contest the result would be that only the portion of the will in favor of Zook's children would be subject to revocation, and the remaining portions would continue as a valid expression of the testatrix's testamentary intention. This being the situation, the other beneficiaries are not affected by the contest since they are not interested parties to it. (See *Estate of Carson, supra,* 184 Cal. at p. 441.)

We apprehend, moreover, that since the provisions in favor of Zook's children are separable from the remainder of the will so that the remaining portions of the will constitute a valid expression of the testatrix's testamentary intention, any invalidity in the Zook provisions would result only in rendering that device invalid. Such a void devise would then fall into the residue of the estate. ██ It is the accepted rule in this state that when there is a valid general residuary clause in a will ineffectual legacies and lapsed or void devises go to the residuary devisees and legatees unless a contrary intention is shown by the will. (*Estate of Russell,* 150 Cal. 604, 605 [89 P. 345]; *Estate of Stauffer, supra,* 142 Cal.App.2d at p. 43; *Estate of Mathie,* 64 Cal.App.2d 767, 779 [149 P.2d 485].) ██ Here there is clearly a valid residuary clause which leaves the residuum to four hospitals. Accordingly, if the Zook devise were declared invalid it would go into the residuum of the estate since no contrary intention is expressed in the will. Appellants as heirs under the intestacy laws would not, therefore, be entitled to any part of such lapsed or void devise.

In view of the foregoing we conclude that appellants have not shown that they have a direct contingent pecuniary interest in the devolution of the testatrix's estate which would be impaired or defeated by the preliminary distributions prayed for or that they have any pecuniary interest which would be benefited by the setting aside of the Zook devise. We reach this conclusion as a matter of law based upon the state of the record before us. The construction of the will does not turn on the credibility of extrinsic evidence and therefore its interpretation is solely a judicial function and is, therefore, a question of law. (*Union Oil Co.* v. *Chandler,* 4 Cal.App.3d 716, 724 [84 Cal.Rptr. 756]; see *Estate of Russell,* 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353].) As for the interpretation of the petition for the revocation of probate, such a pleading speaks for itself and its meaning and construction is the business and duty of the court. (*Merchants Fire Assur. Corp.* v. *Retail Credit Co.,* 206 Cal.App.2d 55, 62

[23 Cal.Rptr. 544]; *Taylor* v. *Middleton,* 67 Cal. 656, 657 [8 P. 594].) Since we are dealing with a judicial function on a question of law, we are not bound by the trial court's interpretation. (See *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Union Oil Co.* v. *Chandler, supra.*) Under our interpretation the results reached below were correct.[3]

The decrees of preliminary distribution are affirmed.

Sims, J., and Elkington, J., concurred.

---

[3]In a supplemental brief, John E. Troxel, executor of the instant will, now urges us to reverse the decree of preliminary distribution in favor of Lone Mountain College or modify it to conform to the provisions of the subject will, although in his previous respondent's brief he had argued that we should affirm the orders decreeing preliminary distribution. The basis for the request for a reversal or modification is the contention that preliminary distribution is premature because the three years provided for in the will within which to pay pecuniary bequests have not yet lapsed, and the further contention that such decree violates the order of priorities set forth in the will. We do not deem it appropriate to determine these issues since they were not raised below and were not presented here until the briefing dealing with the actual issues presented in the court below had been concluded. It is a general rule of appellate procedure that issues or questions not raised or presented to the trial court will not be considered on appeal. (*Damiani* v. *Albert,* 48 Cal.2d 15, 18 [306 P.2d 780]; *Imperial Valley L. Co.* v. *Globe G. & M. Co.,* 187 Cal. 352, 359 [202 P. 129]; *Estate of Cunningham,* 148 Cal.App.2d 8, 13 [305 P.2d 920]; *Estate of Raphael,* 115 Cal.App.2d 525, 529 [252 P.2d 979].)